IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRADLEY B. MILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-889-B-BN |
| | § | |
| VIRGINIA TALLEY DUNN, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Bradley B. Miller has again filed a *pro se* lawsuit against his ex-wife, Defendant Virginia Talley Dunn, and others – this time, the Hockaday School, where their daughter is a student; current and former Hockaday administrators or employees; and lawyers who have represented either Dunn or Hockaday's current Head of School. *See* Dkt. No. 3. Miller also moved for leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. No. 4. So United States District Judge Jane J. Boyle referred the complaint to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference.

The Court will grant Miller's IFP motion through a separate order, subjecting the complaint to screening under 28 U.S.C. § 1915(e). And the undersigned enters these findings of fact, conclusions of law, and recommendation that, to the extent and for the reasons set out below, the Court should dismiss the complaint.

**Legal Standards**

Section 1915(e) requires that the Court "dismiss the case at any time" if it "fails

to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The Court is therefore "statutor[ily] mandate[d] to dismiss a complaint whenever it becomes apparent to the court that no claim for relief is stated." *Harmon v. Nguyen*, No. 3:14-cv-2038-D-BN, 2016 WL 750923, at *5 (N.D. Tex. Feb. 4, 2016) (quoting *Moore-Bey v. Cohn*, 69 F. App'x 784, 787-88 (7th Cir. 2003) (per curiam)), *rec. adopted*, 2016 WL 740381 (N.D. Tex. Feb. 25, 2016).

"The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam). Accordingly, the pleading requirements set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply to the Court's screening of a complaint filed IFP.

Considering these standards, Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, just "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557).

On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

And, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

In sum, to avoid dismissal, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

**Analysis**

"Jurisdiction is the power to say what the law is." *United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023). So consideration of "[j]urisdiction is always first."

*Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (citation omitted). And, because "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute,'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), "subject-matter delineations must be policed by the courts on their own initiative even at the highest level," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (citations omitted).

Miller is a frequent litigant in this Court, the United States Court of Appeals for the Fifth Circuit, and the United States Supreme Court. *See, e.g.*, Dkt. No. 6 (filed by Miller and identifying similar cases that he has filed in, or removed to, federal court, all stemming from the same underlying divorce proceeding and suit affecting parent-child relationship, pending in a state court in Dallas County, Texas).

So Miller is aware that, under their limited jurisdiction, federal courts may only hear a case if it involves a question of federal law or where diversity of citizenship exists between the parties. *See, e.g.*, 28 U.S.C. §§ 1331, 1332.

And Miller alleges that there is jurisdiction under Section 1331 and 28 U.S.C. § 1343(a) "because this case arises under 42 U.S.C. §§ 1981, 1983, 1985, … 1986[, 1988(a)] and the First and Fourteenth Amendments to the United States Constitution" and that, "[a]t all relevant times, state-court District Judge Andrea Plumlee, Associate Judge Danielle Diaz, attorney David H. Findley, Derek R. Staub, and Anthony J. Campiti acted under color of the statutes, ordinances, regulations, customs, and usages of the City, the County, and of the State of Texas." Dkt. No. 3 at

4.

He further alleges that "[t]his Court has jurisdiction under 28 U.S.C. §§ 1332(a)(l) because Plaintiff and Defendant Karen Warren Coleman reside in different states" and that "[t]he Court has supplemental jurisdiction over [his] state-law claims under 28 U.S.C. § 1367." *Id.*

Starting with Section 1332, Miller is incorrect. To obtain jurisdiction under diversity, each plaintiff's citizenship must be diverse from each defendant's citizenship. That is not so here, as Miller alleges.

Turning next to federal question jurisdiction, such jurisdiction "is granted in 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), which provide district courts with original jurisdiction over civil actions that involve rights arising under the Constitution and federal laws." *Tiner v. Cockrell*, 756 F. App'x 482, 483 (5th Cir. 2019) (per curiam).

Similarly, Section 1343(a)(4) provides for jurisdiction of any civil action "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4). The concern prompting passage of this provision was "providing jurisdiction for actions dealing with the civil rights enumerated in 42 U.S.C. § 1985, and most notably the right to vote." *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 621 (1979). And, "[w]hile the words of [Sections 1343(a)(3) and (a)(4)] are not limited to the precise claims which motivated their passage, it is inappropriate to read the jurisdictional provisions to encompass new claims which fall well outside the

common understanding of their terms." *Id.* (footnote omitted).

Meanwhile, Sections 1343(a)(1) and (a)(2) are expressly limited to Section 1985.

So the undersigned will examine the plausibility of Miller's federal claims.

Because, if those claims should be dismissed at this initial stage, that would remove the sole "independent basis of subject matter jurisdiction" to allow for supplemental jurisdiction under 28 U.S.C. § 1367 for the remaining state law counts. *Atkins v. Propst*, No. 22-10609, 2023 WL 2658852, at *2 (5th Cir. Mar. 28, 2023) (per curiam) (citing *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214 (5th Cir. 2012)).

As to violations of the Constitution, Miller generally alleges that, through the underlying state court action, he "has been, and is still being, affirmatively denied basic constitutional rights to at least: (A) freedom of speech and assembly; (B) the right to parent his child; (C) due process; (D) fair and competent tribunals; (E) reasonable notice and opportunity to be heard; (F) fair and lawful use in civil prosecution and defense of relevant and material evidence and of applicable statutory, rule, and case law authorities; and (G) liberty and property protections." Dkt. No. 3 at 3.

Starting with Section 1983, "[a] plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting, in turn, *United States v. Classic*, 313 U.S. 299, 326 (1941))).

None of the defendants named are state officials or employees. And "[p]rivate individuals generally are not considered to act under color of law, but private action may be deemed state action when the defendant's conduct is fairly attributable to the State." *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (cleaned up; quoting *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005), then *Priester v. Lowndes Cnty.*, 354 F.3d 414, 423 (5th Cir. 2004)).

Starting with the three attorneys named as defendants – and cited in Miller's invocation of jurisdiction based on a federal question – "[t]he law is clear that a private attorney who merely represents a client in a civil proceeding ... does not act under the color of state law." *Dolenz v. Akin*, No. 3:95-cv-1605-P, 1997 WL 21388, at *3 (N.D. Tex. Jan. 14, 1997) (collecting cases), *aff'd*, 129 F.3d 612 (5th Cir. 1997) (per curiam); *see also Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) ("[P]rivate attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983.").

But one way a plaintiff may establish that conduct by private actors is fairly attributable to the State is by showing that the private party was "a 'willful

participant in joint activity with the State or its agents.'" *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citations omitted).

To do so, "the plaintiff must allege facts that suggest 'an agreement between the ... defendants to commit an illegal act' and 'an actual deprivation of constitutional rights.'" *Terwilliger v. Reyna*, 4 F.4th 270, 285 (5th Cir. 2021) (quoting *Cinel*, 15 F.3d at 1343); *see also Brinkmann v. Johnston*, 793 F.2d 111, 112-13 (5th Cir. 1986) (per curiam) ("In *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982), we held that 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983.")).

Miller does assert throughout the complaint that the defendants conspired against him to violate his constitutional rights, including (presumably) with the state judge who has presided over the underlying family law action and that court's associate judge.

But, "[a]bsent from the complaint is any sufficiently pled agreement to violate [Miller's] constitutional rights[:] 'A conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" *Terwilliger*, 4 F.4th at 285 (quoting *Twombly*, 550 U.S. at 557); *see also Payne v. Anthony Scott Law Firm PLLC*, No. 3:22-CV-2926-M-BK, 2023 WL 3587775, at *4 (N.D. Tex. May 5, 2023) ("Plaintiff's assertion that Defendants conspired with Judge Jernigan to violate his rights does not demonstrate that Defendants are state actors simply because they filed successful motions against him in the bankruptcy action based on 'false accusations' that he had harassed and defamed Eley. *See Cinel*, 15 F.3d at 1343-44

(stating that simply alleging a conspiracy between state and private actors, without alleging facts that suggest an agreement, is not enough to overcome a Rule 12(b)(6) motion)."), *rec. accepted*, 2023 WL 3590686 (N.D. Tex. May 22, 2023).

In sum, because Miller fails to plausibly allege that a defendant acted under color of state law, his Section 1983 claims fail. *See Miller v. Dunn*, No. 3:20-cv-759-E-BN, 2023 WL 10512247, at *15-*16 (N.D. Tex. Sept. 25, 2023), *supp. by* 2023 WL 10512153 (N.D. Tex. Oct. 3, 2023), *recs. accepted*, 2024 WL 1317793 (N.D. Tex. Mar. 17, 2024).

Miller also appears to allege claims under Sections 1981, 1985, and 1986. "But Miller does not allege unequal treatment based on race or class." *Miller*, 2023 WL 10512153, at *2. So his claims under these civil rights provisions are also not plausibly alleged:

> Section 1981 "generally forbids racial discrimination in the making and enforcement of private contracts, including private employment contracts, whether the aggrieved party is black or white." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981) (citations omitted). The statute "guarantees to '[a]ll persons within the jurisdiction of the United States ... the same right ... to make and enforce contracts ... as is enjoyed by white citizens.'" *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (quoting 42 U.S.C. § 1981(a)). And, "[w]hile the statute's text does not expressly discuss causation, it is suggestive," such that, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1015, 1020 (2020); *see also Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020) (per curiam) ("Although similar in some respects to Title VII, 42 U.S.C. § 1981 requires plaintiff's showing but-for causation." (citing *Comcast*, 140 S. Ct. at 1014)).
> 
> "Section 1985(1) prohibits conspiracies 'to prevent, by force, intimidation, or threat' a federal officer from discharging his duties or to injure him because of his lawful discharge of his duties," and "Section

1985(2) prohibits conspiracies to deny any citizen equal protection of the laws or to injure a citizen for his efforts to ensure the rights of others to equal protection," *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) (citations and footnote omitted), while "Section 1985(3) prohibits private conspiracies to deprive persons of equal protection of the laws," *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 978 (5th Cir. 1986) (footnote omitted).

And "Section 1986 penalizes those with knowledge of and the power to prevent § 1985 conspiracies who fail to do so." *Bryant*, 597 F.3d at 687.

While "[a] cause of action under § 1985(1) requires no allegation of racial or class-based discriminatory animus," *id.* at 688 (citing *Kush v. Rutledge*, 460 U.S. 719, 726 (1983)), Miller's allegations do not implicate a federal officer.

And both Sections 1985(2) and 1985(3) require allegations "that the conspirator's action was driven by race or class-based discriminatory animus." *Williams v. City of Irving*, No. 3:15-cv-1701-L, 2018 WL 4145052, at *7 (N.D. Tex. Aug. 30, 2018) (citing *Bryant*, 597 F.3d at 687; *Daigle*, 794 F.2d at 979); *see also Bryant*, 597 F.3d at 687 ("The 'language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or ... class-based, invidiously discriminatory animus behind the conspirator's action.' *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added) (referring to § 1985(3)). This Circuit has held that the class-based animus requirement of § 1985(3) applies equally to causes of action under the second clause of § 1985(2) such as Bryant's claims here. *Daigle v. Gulf State Utils. Co.*, 794 F.2d 974, 979 (5th Cir. 1986) (noting the parallel language in §§ 1985(2) and 1985(3) prohibiting certain conduct with an intent to deny '*equal protection* of the laws').").

In addition to failing to allege animus based on race or class, as to Miller's [ ] claims under Sections 1985 and 1986, Miller has not alleged a plausible conspiracy for the reasons set out [above. S]ee also *Gonzalez v. Gill*, No. 21-60634, 2023 WL 3197061, at *4 (5th Cir. May 2, 2023); *cf. id.* at *4 n.6 ("In *Rayborn v. Mississippi State Board of Dental Examiners*, we explained that a 'conspiracy must be race-based to state a cause of action for violation of § 1985,' 776 F.2d 530, 532 (5th Cir. 1985), and we have repeated this assertion in some later cases. *See, e.g.*, *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987); *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019). However, because we conclude that Gonzalez's § 1985 claims fail on the conspiracy element, we need not decide today whether *Rayborn* binds us or whether allegations of a conspiracy based on what Gonzalez calls 'alien immigrants' would state a claim under the second part of § 1985(2) or § 1985(3).").

*Id.* at \*2-\*3.

Any claim under Section 1988 is similarly defective, as that statute "provides that a plaintiff may recover reasonable attorney's fees for proceedings brought under §§ 1981, 1981a, 1982, 1983, 1985, and 1986; and reasonable expert fees in § 1981 or § 1981a proceedings." *Wheeler v. Ceniza*, No. 3:12-cv-1898-L, 2013 WL 1091242, at \*8 (N.D. Tex. Mar. 15, 2013) (citing 42 U.S.C. § 1988(b), (c)).

And, because Miller fails to allege a federal cause of action, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

To determine whether it should "relinquish jurisdiction over pendent state law claims," a court looks to "statutory factors set forth by 28 U.S.C. § 1367(c)" – "(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction" – as well as "the common law factors of judicial economy, convenience, fairness, and comity" set forth by *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158-59 (5th Cir. 2011); *see also IntegraNet Physician Res., Inc. v. Texas Indep. Providers, L.L.C.*, 945 F.3d 232, 241-43 (5th Cir. 2019), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (en banc).

As "no single factor is dispositive," *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), "[t]he overall balance of the statutory factors is important," *Enochs*, 641

F.3d at 159 (citation omitted). And, here, that balance favors relinquishing jurisdiction over remaining state law claims.

In sum, the Court should dismiss all claims arising under federal law and relinquish jurisdiction over the remaining state law claims, dismissing those claims without prejudice, to allow Miller to pursue those claims in a state forum if he so chooses.

That said, the opportunity file objections to this recommendation (further explained below) allows Miller a chance to cure the deficiencies identified above (if possible) and thus show the Court that this case should not be dismissed as set out at this time and that the Court should instead grant him leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)). *Cf. Martinez v. Nueces Cnty.*, 71 F.4th 385, 391 (5th Cir. 2023) ("If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022))).

## Recommendation

The Court should dismiss all claims arising under federal law and relinquish

jurisdiction over the remaining state law claims, dismissing those claims without prejudice, to allow Plaintiff Bradley B. Miller to pursue those claims in a state forum if he so chooses, unless Miller demonstrates a basis to allow leave to amend through timely objections.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 16, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE